UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARIO GODIVA GREEN,
Plaintiff,
v.
EQUINOX HOLDINGS, INC., et al.,
Defendants.

Case No. 26-cv-08326-WHO

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO AMEND AND DENYING MOTION TO COMPEL ARBITRATION**

Re: Dkt. Nos. 8, 19

Plaintiff Mario Godiva Green ("Green") worked as a fitness instructor for defendant Equinox Holdings, Inc. ("Equinox"), for over a decade, before being terminated in February 2026. He filed this suit in state court alleging discrimination, harassment, retaliation, failure to prevent such misconduct, wrongful termination, and violation of the Equal Pay Act of 1963. Equinox removed the case to this court based on diversity of citizenship between Green and Equinox and on Green's federal Equal Pay Act claim.

Equinox moves to compel arbitration of Green's claims pursuant to its employment policies and to stay the litigation. Green moves for leave to amend his complaint to remove the federal claim and to join Equinox personnel, who would destroy complete diversity, and to remand this case for lack of subject matter jurisdiction. For the reasons discussed below, Green's motion for leave to amend his complaint, to join individual defendants, and to remand is GRANTED. Since I will lacking subject matter jurisdiction once the new defendants are added, the motion to compel arbitration must be directed to the state court.

**BACKGROUND**

**I. Factual Background**

Green, known professionally as "Mario Godiva," was a nationally recognized fitness

United States District Court
Northern District of California

trainer with a devoted following and celebrity clientele, prior to his joining Equinox. *See* Notice of Removal Ex. A ("Compl.") [Dkt. No. 1] ¶¶ 11–14. Equinox hired him as a Group Fitness Instructor in New York City on April 9, 2010. *Id.* ¶ 16. During the first four years of his employment, Green taught coveted prime-time classes and back-to-back sessions and received praise from Equinox members. *Id.* ¶ 21. Despite his experience, tenure, and performance, he failed to receive any pay increase during those first four years. *See id.* ¶¶ 30–31. After he received a raise in 2014, he would not receive another raise until 2024. *Id.* ¶¶ 31–32.

In 2015, an Equinox member called Green a racial slur during a class. *Id.* ¶ 22. Green promptly reported the incident to his direct manager, but he did not receive corrective action from management. *Id.* Though he tried to remain professional and continue advancing his career, he was left feeling that Equinox was not truly committed to supporting diversity and inclusion. *Id.* ¶¶ 24, 27.

In 2017, following his recovery from a serious cancer diagnosis, Green decided to relocate to Los Angeles, where he worked in Equinox's Santa Monica and Culver City facilities. *Id.* ¶ 28. During that period, he brought his documented service dog to the Equinox studios and was harassed for doing so. *See id.* ¶¶ 33–34, 98.

In early 2021, Green relocated to San Diego and worked at Equinox's La Costa facility. *Id.* ¶ 28. He was laid off due to the COVID-19 pandemic but reassured by the Director of Group Fitness that upon return, he would retain his seniority and status. *Id.* ¶ 35. When he was rehired on February 10, 2022, Equinox treated him as a new hire rather than restoring his prior seniority and status as promised. *Id.* ¶ 36. Upon his official return, he was the only Black instructor among a largely white group fitness staff. *Id.* ¶ 39.

While he was working at that facility, Green requested a double-session schedule to make his commute more manageable, but his supervisor, Ashley Erickson, denied his request. *See id.* ¶¶ 36–38. Erickson also assigned double sessions and preferred class opportunities to white instructors. *Id.* ¶ 38. Green perceived the denial of his request and unequal assignment of opportunities as race-motivated, and he filed a complaint concerning his treatment. *Id.* ¶ 40.

Later that year, in June, Green experienced debilitating hip pain and requested one week of

leave. *Id.* ¶ 41. He disclosed to Erickson that he was a cancer survivor with underlying health conditions and was experiencing health complications. *Id.* Despite those disclosures and his apparent medical deterioration, Erickson continued demanding additional medical clearance and subjected him to "heightened administrative scrutiny" regarding his absence. *Id.*

Green was eventually hospitalized for several weeks for meningitis, a life-threatening brain and spinal infection. *Id.* ¶ 42. While he was hospitalized, Erickson sent him 27 text messages, asking him to contact Human Resources ("HR") and letting him know that if he did not file a Leave of Absence ("LOA"), he "could be termed from the system and [would] need to reapply" upon return. *Id.* Green also received numerous emails from HR stating that failure to complete a 34-page LOA packet would result in voluntary resignation. *Id.* ¶ 43.

Green's return-to-work date was September 19, 2022. *Id.* ¶ 44. Upon his return, however, Erickson ignored his medical clearance and treated him as a new hire, disregarding his experience. *Id.* ¶ 45. She allowed him to teach only one fitness class, citing "business decisions" as the reason, and reassigned his prime-time class and double sessions to herself. *Id.* Given Green's commute, teaching only one class was neither practical nor economically viable for him. *Id.* ¶ 46.

On October 11, 2022, Green filed a formal complaint with Equinox, detailing the emails and texts he received while hospitalized and Erickson's scheduling practices following his return. *Id.* ¶ 47. He also made a complaint to HR Representative Jason Dilay, who told Green that Equinox would investigate his complaint. *Id.* One month later, Equinox closed the investigation, stating that it could not substantiate Green's claims. *Id.* ¶ 49. Dilay e-mailed Green a copy of the investigation report. *Id.*

In 2023, Green requested a transfer to San Francisco. *Id.* ¶ 29. Following his transfer, he was assigned a prime-time class, but after only three weeks of teaching it, management removed him from this class, citing declining attendance even though class attendance had been increasing. *Id.* ¶ 51. The class was given to a newly hired, less qualified, white instructor. *Id.*

On September 7, 2025, Green emailed General Manager Colette Hernandez to raise concerns that he was being targeted. *Id.* ¶ 52. Hernandez sent other instructors to observe Green's classes and failed to consider Green for new class opportunities. *Id.* ¶ 53.

In January 2026, Regional Group Fitness Manager Matthew Modleski directed Green to convert his Pilates Fusion class to a True Barre class, effective February 2, 2026. *Id.* ¶ 54. Green responded to Modleski to let him know that he had complained to HR that the directive constituted a retaliatory change to his employment conditions and an attempt to constructively discharge him. *Id.* ¶ 55. The evening before the mandatory format change was set to take place, Green notified Modleski and Hernandez that he was unable to teach his class due to his medical condition. *Id.* ¶ 56. Equinox approved his sick leave. *Id.* Green returned the following week to teach the class. *Id.* ¶ 57. At the time, he was the only Black instructor on that facility's schedule. *Id.*

On February 13, 2026, HR notified Green that it was investigating a member's formal complaint regarding Green's True Barre teaching style. *Id.* ¶ 58. Later that day, Modleski emailed Green a termination notice, effectively immediately. *Id.* ¶ 59. The notice cited Green's deviation from the True Barre format as the basis for his termination, even though the cited deviations were part of the official True Barre manual. *Id.* ¶¶ 59–60.

## II. Procedural Background

Green filed multiple charges with the Civil Rights Department ("CRD") of California and received right-to-sue notices in June 2025 and June 2026. *Id.* ¶ 10; Exs. A–C.

On June 17, 2026, Green filed a complaint against Equinox in the Superior Court of the State of California, County of San Francisco. *See* Compl. Green asserted violations of the California Fair Employment and Housing Act ("FEHA"), the federal Equal Pay Act, and California's whistleblower-protection statute. *See id.* ¶¶ 65–159. On August 11, 2026, Equinox removed this case to federal court, citing both diversity jurisdiction and federal question jurisdiction as the bases for subject matter jurisdiction. Notice of Removal ¶¶ 7–10. On August 25, 2026, Equinox moved to compel arbitration pursuant to the Alternative Dispute Resolution Agreement ("ADR Agreement") that was a condition of Green's employment. Motion to Compel Arbitration and Stay Proceedings ("Mot. to Compel") [Dkt. No. 8].

Without seeking leave to amend the complaint, on September 9, 2026, Green filed an amended complaint naming Erickon, Hernandez, Dilay, and Ian Beduya (a General Manager at Equinox) as individual defendants, adding individual FEHA harassment and intentional inflection

of emotional distress ("IIED") claims against those individuals, and dropping the federal Equal Pay Act count. *See* First Amended Complaint for Damages ("Proposed Compl.") [Dkt. No. 17]. The next day, Green moved for leave to amend his complaint, to join the four new defendants, and to remand this case to state court. Motion for Leave to Amend, Approval of Nondiverse Joinder, and Remand ("Mot. to Amend") [Dkt. No. 19-1].

## LEGAL STANDARD

### I. Motion for Leave to Amend and Remand

Federal Rule of Civil Procedure 15(a)(2) directs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the Ninth Circuit has a "strong presumption against removal jurisdiction." *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2012). Consistent with that presumption, when a party seeks leave to amend to join a non-diverse party after an action has been removed from state court, 28 U.S.C. § 1447(e), rather than Rule 15, provides the appropriate standard. *See, e.g.*, *Cook v. USAA Gen. Indem. Co.*, No. 23-CV-01049-RS, 2023 WL 4183479, at *1 (N.D. Cal. June 23, 2023); *Navarro v. SmileDirectClub, Inc.*, No. 22-CV-00095-WHO, 2022 WL 1124594, at *2 (N.D. Cal. Apr. 15, 2022).

Section 1447(e) provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand to the State court." 28 U.S.C. § 1447(e). "A district court may not allow joinder and retain jurisdiction." *Stevens v. Brink's Home Sec., Inc.*, 378 F.3d 944, 949 (9th Cir. 2004).

Factors relevant to determining whether to allow joinder under section 1447(e) include: whether the claims against the proposed defendant appear valid; whether the proposed defendant is a necessary party; whether any statute of limitations would preclude an original action against the proposed defendant in state court; whether the plaintiff has unjustifiably delayed in seeking joinder; whether denying joinder would prejudice the plaintiff; and whether joinder is intended solely to defeat federal jurisdiction. *Burch v. Ford Motor Co.*, 758 F. Supp. 3d 1092, 1098 (N.D. Cal. 2024) (internal quotations and citations omitted). Any of the factors might prove decisive,

and none is absolutely necessary. *Id.* (internal quotations and citations omitted).

**II. Motion to Compel Arbitration**

The parties do not dispute that the Federal Arbitration Act ("FAA") governs the motion to compel arbitration. 9 U.S.C. §§ 1 *et seq.* Under the FAA, a district court determines: (i) whether a valid agreement to arbitrate exists and, if it does, (ii) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "In determining whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (internal quotation marks and citation omitted). If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

**DISCUSSION**

Federal courts are "obliged to inquire sua sponte whenever a doubt arises as to the existence of federal jurisdiction." *Rosenwald v. Kimberly-Clark Corp.*, 152 F.4th 1167, 1173 (9th Cir. 2025) (citation omitted). Additionally, "[t]he removal statutes are construed restrictively so as to limit removal jurisdiction," such that "[a]ny doubts as to removability should be resolved in favor of remand." *Arakji v. Microchip Tech., Inc.*, No. 19-CV-02936-BLF, 2019 WL 5386239, at *2 (N.D. Cal. Oct. 22, 2019). Consistent with other courts in this circuit, I will therefore examine this Court's jurisdiction and consider Green's motion for leave to join non-diverse parties and remand the case before addressing Equinox's motion to compel arbitration. *See, e.g.*, *Farwana v. Tesla, Inc.*, No. 24-CV-07518-BLF, 2025 WL 1107271, at *3 (N.D. Cal. Apr. 14, 2025) (addressing plaintiff's motion for leave to join non-diverse party and remand case before addressing defendant's motion to compel arbitration); *Cook*, 2023 WL 4183479, at *2–3 (same).

United States District Court
Northern District of California

## I. Motion for Leave to Amend and to Remand

### A. Validity of Claims

"The existence of a facially legitimate claim against the putative defendant weighs in favor of permitting joinder under section 1447(e)." *Burch*, 758 F. Supp. 3d at 1099 (citation omitted). Equinox "frames part of its opposition in terms of the doctrine of 'fraudulent joinder,'" but the "core inquiry in a fraudulent joinder analysis, i.e., whether there is any possibility of recovery against the non-diverse defendant, is subsumed in the consideration in a section 1447(e) analysis of whether plaintiff can state a valid claim against the party sought to be joined." *Taylor v. Honeywell Corp.*, No. 09-CV-04947-SBA, 2010 WL 1881459, at *2 n.1; *see also Burch*, 758 F. Supp. 3d at 1099 (observing that "[c]ourts in the Ninth Circuit have reasonably looked to the fraudulent joinder standard when considering this factor" and collecting cases). Therefore, I consider Equinox's fraudulent joinder arguments under the section 1447(e) framework.

In considering whether the plaintiff's claims are valid, I need only determine whether the claim *seems* valid, which is different from the standard in either a motion to dismiss or a motion for summary judgment. *Burch*, 758 F. Supp. 3d at 1099; *see also Farwana*, 2025 WL 1107271, at *6 (explaining that the claims need not be plausible or stated with particularity but simply sufficient for a state court to find that the plaintiff states a cause of action against the proposed defendant). To succeed under this factor, the defendant must establish that the plaintiff could not amend his complaint to add additional allegations correcting any deficiencies. *Burch*, 758 F. Supp. 3d at 1099.

Here, Green seeks to assert claims against Hernandez, Erickson, Dilay, and Beduya for hostile work environment harassment in violation of FEHA and IIED. As explained below, the limited allegations in the complaint only give rise to colorable claims against Hernandez and Erickson.

#### 1. Claims Against Hernandez

To establish a claim for harassment, the plaintiff must demonstrate that (1) he is a member of a protected group; (2) he was subject to harassment because he belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment. *Sanchez v. Island*

*Hosp. Mgmt. III, LLC*, No. 25-CV-07203-BLF, 2026 WL 2031815, at *3 (N.D. Cal. July 13, 2026). To state a claim for IIED, the plaintiff must allege (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Tien v. United Airlines, Inc.*, No. 23-CV-02622-JSW, 2023 WL 5444678, at *3 (N.D. Cal. Aug. 23, 2023).

Green's FEHA harassment claim and IIED claim are based on the same underlying facts. Green alleges that following his transfer to the San Francisco facility, he emailed Hernandez to raise concerns that he was being targeted; that unlike the General Manager before her, who had frequently attended Green's classes and praised his teaching style, Hernandez treated Green "differently"; and that Hernandez sent other instructors to observe his classes and failed to consider him for new class opportunities. Proposed Compl. ¶¶ 56–57. Green also alleges that he was subjected to "shunning . . . during staff meetings, belittling of [his] job, and supervisor's reprimands . . . in front of coworkers," *id.* ¶ 126, though he does not specify which defendants engaged in this conduct.

In opposition, Equinox asserts that the challenged conduct consists entirely of personnel management actions that cannot support either claim. *See* Defendant's Opposition to Plaintiff's Motion for Leave to Amend, Approval of Nondiverse Joinder, and Remand ("Equinox Oppo.") [Dkt. No. 26] at 10–12. California law is not so categorical. The California Supreme Court has stated that supervisors may be individually liable for harassment where the personnel management decisions "have a secondary effect of communicating a hostile message." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 709 (2009). Accordingly, personnel management actions can be evidence of harassment under FEHA. *Croft v. GTT Commc'ns, Inc.*, No. 21-CV-01083-EMC, 2021 WL 1847816, at *6 (N.D. Cal. May 10, 2021).

The inquiry does not end there, however. On reply, Green argues that Hernandez's conduct, viewed in context, communicated that he was unwelcome because of his race and disability. Reply in Support of Plaintiff's Motion for Leave to Amend, Approval of Nondiverse

Joinder, and Remand ("Green Reply") [Dkt. No. 27] at 9. The issue for Green is that official employment actions communicate a hostile message "when the actions establish *a widespread pattern of bias*." *Croft*, 2021 WL 1847816, at *6 (citation omitted). Here, it is obvious that Green has not alleged a widespread pattern. As evidence of harassment, he has only pointed to (1) Hernandez sending other instructors to watch his classes, and (2) her failure to consider him for new teaching opportunities. In cases where the plaintiff similarly alleged only a small number of actions, even considering the defendant's heavy burden to show fraudulent joinder, courts have found that the plaintiff did not make out a colorable harassment claim. *See, e.g.*, *Sanchez*, 2026 WL 2031815, at *4–5 (finding defendant fraudulently joined and denying motion to remand where plaintiff alleged only a small number of comments and actions by defendant); *Tien*, 2023 WL 5444678, at *2–4 (same where plaintiff alleged only a single communication from the defendant); *Croft*, 2021 WL 1847816, at *6–7 (same where plaintiff alleged supervisor called him weak on one occasion and later terminated his employment); *Quigley v. United Airlines, Inc.*, No. 21-CV-00538-WHO, 2021 WL 1176687, at *5–6 (N.D. Cal. Mar. 29, 2021) (same where only allegation supporting harassment and IIED claims was that defendant sent plaintiff a termination letter).

The alleged conduct fails to support an IIED claim for the same reason. "Extreme and outrageous" conduct is conduct that "goes beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized community." *Tien*, 2023 WL 5444687, at *3 (cleaned up). Absent such conduct, personnel management activity is insufficient to support an IIED claim, even if improper motive is alleged. *Wu v. Shopify (USA) Inc.*, No. 25-CV-05960-RFL, 2025 WL 2837766, at *2 (N.D. Cal. Oct. 7, 2025). Hernandez's alleged conduct does not rise to that level and so fails to support an IIED claim.

As mentioned above, courts facing similarly thin allegations have denied remand. In such cases, however, it was clear that the plaintiff could not amend the complaint to cure any deficiencies. *See Sanchez*, 2026 WL 2031815, at *5 ("Plaintiff has offered no indication that additional facts could be added if given leave to amend and does not request that opportunity."); *Quigley*, 2021 WL 1176687, at *6 (denying remand where the plaintiff raised no argument on the fraudulent joinder issue); *Mohammed v. Am. Airlines, Inc.*, No. 19-CV-01946-WHA, 2019 WL

United States District Court
Northern District of California

3577160, at *4 (N.D. Cal. Aug. 6, 2019) ("Plaintiff argues that he can amend his complaint to meet this lower standard, but the only facts he offers in support of such amendment are the same facts that he initially alleged []."). Green requests the opportunity to "particularize" the allegations regarding shunning, belittlement, and public reprimands and to more precisely attribute those acts to Hernandez. Green Reply at 9–10. These acts could form the basis of a harassment claim. *See Roby*, 47 Cal. 4th at 708–09.

**2. Claims Against Erickson**

Green also seeks to bring harassment and IIED claims against Erickson. These claims are based on allegations that (1) Erickson limited his schedule while assigning double sessions and preferred class opportunities to white instructors, while he was the sole Black instructor; (2) she demanded additional medical clearance from Green and subjected him to greater administrative scrutiny after he disclosed his health condition to her; (3) she texted him multiple times to contact HR and notify him that he could be "termed from the system" without an LOA, while he was hospitalized; (4) she treated him as a new instructor upon his return and allowed him to teach only one class, citing "business decisions" as the reason; and (5) she reassigned his prime-time class and double sessions to herself. *See* Proposed SAC ¶¶ 40–46, 49.

Such acts, even if they are "personnel management actions" as argued by Equinox, may nonetheless support a FEHA harassment claim. In *Garcia v. Nestle USA, Inc.*, No. 23-CV-06199-WHA, 2024 WL 923774 (N.D. Cal. Mar. 1, 2024), the plaintiff alleged that after he was placed on "light duty" due to his injury, the supervisors repeatedly assigned him to electrical work that he was not licensed or certified to perform, that he was reprimanded in the course of that work, and that he was ultimately terminated. *Id.* at *4. The court ultimately found that a state court could find that some of those actions were "not strictly personnel management decisions or otherwise conveyed a hostile message to plaintiff." *Id.* (internal quotations and citation omitted). Similarly here, taking the allegations in the light most favorable to Green, there is a possibility that a state court could find that Erickson's actions conveyed a hostile message to Green.

Equinox argues that because Green's last alleged interaction with Erickson occurred in late 2022, his claims against her are time-barred by statute. Equinox Oppo. at 12. To bring a civil

United States District Court
Northern District of California

action alleging FEHA violations, a plaintiff must first exhaust administrative remedies by submitting an administrative charge to the CRD within three years of the allegedly unlawful act and receiving a right-to-sue letter. *Beddingfield v. United Parcel Serv., Inc.*, No. 23-CV-05896-EMC, 2024 WL 1521238, at *4 (N.D. Cal. Apr. 8, 2024). The plaintiff then must file any civil claim within one year of receiving the right-to-sue notice. *Id.* In addition, the continuing violations doctrine can extend the statute of limitations to reach "sufficiently similar" and "reasonably frequent" acts of harassment that would otherwise be untimely. *Naseri v. United Parcel Serv., Inc.*, No. 25-CV-09638-RFL, 2026 WL 2227354, at *2 (N.D. Cal. Aug. 3, 2026) (cleaned up).

The record does not clearly show that Green's FEHA harassment claim is time-barred. The complaint Green filed with the CRD on June 30, 2025, references a U.S. Equal Employment Opportunity Commission (EEOC)/CRD charge he filed on August 17, 2023. Compl. Ex. B. This charge was not attached with either the original or the proposed complaint, so I cannot evaluate if the charge was brought for Erickson's alleged harassment. And because the complaint does not state when in 2022 the latest acts of alleged harassment occurred, I cannot assess whether Green timely filed an administrative complaint. The record also does not show if and when Green received a right-to-sue notice in response to that charge, which prevents me from determining if Green timely filed this action after receiving such notice.

Equinox's argument does not account for the August 17, 2023, charge or the gaps in the record, so I "must presume here that any statute of limitations barrier to pleading a claim against [Erickson] might be eliminated by amended pleadings." *Albert v. Microsoft Corp.*, No. 25-CV-02642, 2026 WL 800669, at *5 (C.D. Cal. Mar. 23, 2026). Accordingly, I find this factor weighs in favor of joining Erickson.[1]

---

[1] Green fails to raise even a colorable claim against Dilay or Beduya. There is not a single allegation of Beduya's conduct. And the complaint only alleges that Dilay received Green's formal complaint and sent Green a copy of the investigation report. Proposed SAC ¶¶ 51, 53. Setting aside whether that conduct was time-barred, Dilay's involvement is clearly insufficient to support either a harassment claim or an IIED claim. *See Quigley*, 2021 WL 1176687, at *6 (finding fraudulent joinder where the defendant's "only alleged involvement in the case was . . . sending [plaintiff] a termination letter"). Green does not offer any additional facts in support of

**B. Necessity of Defendants**

The second factor courts may consider under section 1447(e) is "whether the party sought to be joined is necessary for just adjudication of the issues presented in the lawsuit." *Burch*, 758 F. Supp. 3d at 1100. Equinox contends that the individual defendants are not necessary for adjudication under Rule 19, Equinox Oppo. at 15, but Rule 19's standards do not govern the court's discretion under section 1447(e). *Burch*, 758 F. Supp. 3d at 1100. Rather, this factor focuses on whether the non-diverse defendant is "only tangentially related to the cause of action," such that denying amendment would not result in separate and redundant actions. *Id.* (internal quotations and citation omitted).

Hernandez and Erickson are not "only tangentially related" to Green's case; their alleged conduct is part of the factual basis for the FEHA claims in the original complaint. *See, e.g.*, Compl. ¶¶ 93, 96–97, 129, 132. Green now seeks to bring individual harassment claims against Hernandez and Erickson based on the same conduct. If Hernandez and Erickson are not joined, Green would be forced to pursue such claims in a separate action involving much of the same factual and legal issues.

Equinox submits that the individual defendants' absence would not prevent complete relief because Equinox would be liable for any unlawful acts the individual defendants took within the scope of their employment. Equinox Oppo. at 15. However, FEHA's harassment provisions apply to individual employees as well as employers. *See* Cal. Gov't Code § 12940(j). A plaintiff may therefore hold supervisors personally liable even if their employers are also liable for some or all of their conduct. "Indeed, the California Supreme Court has upheld punitive damages against a supervisor [but not the employer] where both the supervisor and employer were held liable for harassment and the supervisor's conduct was egregious, but the employer's conduct was not." *Li v. Wells Fargo Bank, N.A.*, No. 24-CV-04577-JSC, 2024 WL 5191976, at *4 (N.D. Cal. Dec. 20, 2024) (citing *Roby*, 47 Cal. 4th at 713–720). Even if Green were to recover in part from Equinox,

joining these two individuals and asks that I "limit joinder accordingly." Green Reply at 10. I find that this factor precludes joining Dilay and Beduya.



United States District Court
Northern District of California

he may still be unable to make full recovery unless Hernandez and Erickson are joined. *See id.* This factor weighs in favor of removal.

**C. Statute of Limitations**

This factor weighs against allowing amendment if the plaintiff would *not* be barred from suing the proposed defendant in state court by the statute of limitations. *Farwana*, 2025 WL 1107271, at *5. Green does not contend that he would be time-barred from bringing claims against Hernandez and Erickson in state court, so this factor weighs against granting leave to amend. *See id.*

**D. Unexplained Delay**

When determining whether to allow amendment to add a nondiverse party, courts consider whether the amendment was attempted in a timely fashion, including the length of time that passed between the filing of the original complaint and the amended complaint and whether dispositive motions have been filed. *Burch*, 758 F. Supp. 3d at 1100. Courts may also consider delay from the date of removal, *id.* at 1100–01, and whether the movant knew or should have known of the new parties' roles. *Tarannum v. Nordstrom, Inc.*, No. 26-CV-05005-PCP, 2026 WL 2148330, at *1154 (N.D. Cal. July 27, 2026).

Green concedes that he was aware of the proposed defendants and their conduct. Mot. to Amend at 14. Equinox urges denial of joinder on this basis. Equinox Oppo. at 16–17. At the same time, Green filed his motion less than a month after removal, prior to any discovery or substantive proceedings having taken place. Therefore, this factor only weighs marginally in favor of Equinox. *See Taylor*, 2010 WL 1881459, at *2 (finding that unexplained four and one-half month delay in moving to amend weighed only marginally in favor of defendant).

**E. Prejudice**

Prejudice exists if the proposed defendant is "crucial" to the case, but not if complete relief can be afforded without that defendant. *Burch*, 758 F. Supp. 3d at 1101. This factor weighs in favor of joinder if the plaintiff would be required to abandon the potential claims it has against the proposed defendant or expend resources on duplicative litigation in separate proceedings in state and federal court. *See Taylor*, 2010 WL 1881459, at *4.

United States District Court
Northern District of California

As explained above, if Hernandez and Erickson are not joined in the suit, Green would not be able to assert his statutory rights against them and make full recovery without also bringing suit in state court. Accordingly, this factor favors joinder. *See Li*, 2024 WL 5191976, at *4 (finding that the prejudice factor supported joinder given California's policy favoring holding a supervisor liable for his own acts under FEHA).

**F. Motive**

The plaintiff's motive in seeking the joinder of an additional defendant is relevant to a trial court's decision to grant the plaintiff leave to amend his original complaint. *Burch*, 758 F. Supp. 3d at 1101. As other courts have noted, "suspicion of diversity destroying amendments is not as important now that [section] 1447(e) gives courts more flexibility in dealing with the addition of such defendants," and courts will not impute an improper motive simply because a plaintiff seeks to add a non-diverse defendant post-removal. *Farwana*, 2025 WL 1107271, at *6 (citations omitted).

Though Green was aware of removal and of Equinox's motion to compel arbitration when he sought leave to amend, as explained above, Green could amend his complaint to state facially valid claims against Hernandez and Erickson. As a result, this factor is neutral. *See Burch*, 758 F. Supp. 3d at 1101–02 (finding the motive factor neutral where plaintiff was aware of removal but alleged a valid claim under the fraudulent joinder standard).

**G. Conclusion After Weighing Section 1447(e) Factors**

For the reasons discussed above, I find that with respect to Hernandez and Erickson, three of the six section 1447(e) factors weigh in favor of granting leave to amend, one factor is neutral, and two factors weigh against granting leave to amend. I conclude that these factors permit joining Hernandez and Erickson only. With respect to the other proposed defendants, the factors do not support allowing amendment.

Upon joining Hernandez and Erickson and allowing Green to amend his complaint, this Court will no longer have subject matter jurisdiction. Green is a citizen of California. Notice of Removal ¶ 13. The proposed complaint alleges that Erickson and Hernandez are California residents, Proposed Compl. ¶¶ 7–8, and Green submits evidence indicating that they are based in

United States District Court
Northern District of California

United States District Court
Northern District of California

California. Declaration of Donald R. Williams, Jr., Esq. in Support of Plaintiff's Motion for Leave to Amend, Approval of Nondiverse Joinder, and Remand [Dkt. No. 19-3] ¶¶ 3–4. Equinox does not dispute their citizenship. As a result, there is no longer complete diversity in this case.

Green's proposed complaint also removes the only federal claim in this case, such that this Court will no longer have federal question jurisdiction or supplemental jurisdiction over the remaining state claims. *See Strojnik v. Woodside Hotel Grp., LTD*, No. 20-CV-03204-BLF, 2021 WL 11696238, at *8 (N.D. Cal. Apr. 15, 2021). Therefore, once Green amends his complaint, I will remand this action to state court.

**II. Motion to Compel Arbitration**

Equinox separately moves to compel arbitration based on the contention that the parties agreed to arbitrate employment-related disputes pursuant to Equinox's ADR Agreement. That may be the case. But because granting Green's motion destroys both diversity jurisdiction and federal question jurisdiction, I lack subject matter jurisdiction and cannot rule on the motion to compel.

## CONCLUSION

Green's motion for leave to amend is GRANTED. Green is ORDERED to file a First Amended Complaint consistent with this Order within seven days of the date of this Order. Once it is filed, I will remand the case to the Superior Court of the State of California, County of San Francisco. That court may address Equinox's motion to compel arbitration.

**IT IS SO ORDERED.**

Dated: November 4, 2026

William H. Orrick
United States District Judge